UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| *SPRAGUE ENERGY CORP.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | *Docket No. 05-222-P-S* |
| | ) | |
| *MASSEY COAL SALES* | ) | |
| *COMPANY, INC.,* | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |

### RECOMMENDED DECISION
### ON DEFENDANT'S MOTION TO DISMISS

Defendant Massey Coal Sales Company, Inc. ("Massey") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss three of the six counts of plaintiff Sprague Energy Corp.'s ("Sprague's") amended complaint against it. *See* Defendant's Rule 12(b)(6) Motion To Dismiss ("Motion To Dismiss") (Docket No. 10); Defendant's Memorandum of Law in Support of Its Rule 12(b)(6) Motion To Dismiss ("Dismiss Memorandum") (Docket No. 10); First Amended Complaint ("Complaint") (Docket No. 8). For the reasons that follow, I recommend that the motion to dismiss be granted in part and denied in part.

### I. Applicable Legal Standards

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendants are entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman*

*Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy,* 267 F.3d at 33. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted); *see also, e.g., Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) ("When the factual allegations of a complaint revolve around a document whose authenticity is unchallenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).") (citations and internal quotation marks omitted).[1]

## II.  Factual Context

For purposes of the Motion To Dismiss I accept the following facts as true.

Sprague is a Delaware corporation with a principal place of business in Portsmouth, New Hampshire. Complaint ¶ 1. Sprague acquired Merrill Marine Terminal Services, Inc. ("Merrill"), located in Portland, Maine, in about 2004. *Id.* Massey is a Virginia corporation with a principal place of business in Richmond, Virginia. *Id.* ¶ 2.

Since December 2003 Merrill and Sprague, its successor in interest, have provided certain berthing, stevedoring and terminal services in Portland, Maine. *Id.* ¶ 4. On or about December 22, 2003 Merrill agreed to provide coal discharge and terminal services for MeadWestvaco Corporation ("MeadWestvaco"). *Id.* ¶ 5. Section VI of that agreement provided:

---

[1] Sprague appends two documents to the Complaint, *see* Exhs. A-B to Complaint; however, I have found it unnecessary to make (*continued on next page*)

> All payments for discharge, stockpiling reclaim and loadout charges will be invoiced on completion of discharge based on bill of lading weights; payment is due within 15 calendar days.
>
> Invoice will be rendered to:
>
> > Massey Industrial Coal Sales Company
> > Att'n: Gary J. Smith, Vice President
> > PO Box 26765
> > Four North Fourth Street
> > Richmond, Virginia 23219
>
> > (disbursement agent for MeadWestvaco)
>
> > with a copy to
>
> > MeadWestvaco Corp.
> > Att'n J. Scott Bryant
> > Energy Manager, Procurement
> > 1011 Boulder Springs Drive
> > Richmond, Virginia 23225

*Id*. ¶ 6. In a side letter dated May 25, 2004 Massey promised to serve as the disbursement agent for MeadWestvaco. *Id*. ¶ 8. Paragraph C of the side letter provided:

> MeadWestvaco has designated and it is hereby agreed that Massey Industrial Sales Co. shall be the disbursement agent for MeadWestvaco under the terms of the 22 December 2003 agreement for the current MEE supply period and any subsequent renewals. In this capacity, Massey will faithfully carry out the Payment Terms set forth in Section VI of the 22 December 2003 agreement. In the event MeadWestvaco withdraws its designation of Massey as disbursement agent, MeadWestvaco will act as its own disbursement agent.

*Id*. ¶ 9. The side letter was signed and agreed to by Gary J. Smith on behalf of Massey. *Id*.

From about August 25, 2005 to about August 27, 2005 Sprague provided services to NewPage Corporation ("NewPage"), the successor in interest to MeadWestvaco, in accordance with the December 22, 2003 agreement. *Id.* ¶ 10. Pursuant to the agreement and side letter, on about August 31, 2005 Sprague sent an invoice to Massey in the amount of $207,596.57 for the resulting discharge,

---

further reference to them than is made in the Complaint itself.

3

stockpiling, reclaim and loadout charges. *Id*. ¶¶ 10, 30. Neither MeadWestvaco nor NewPage ever withdrew its designation of Massey as disbursement agent. *Id*. ¶ 10.

Employees of Massey (including Steve Sears, its president) and of NewPage have informed Sprague that Massey then prepared and sent an invoice in the amount of $207,596.57 to NewPage, and NewPage paid over the money in full to Massey. *Id*. ¶¶ 11, 30. Neither Massey nor NewPage has provided Sprague with a copy of that invoice, so the exact date it was transmitted to NewPage is not currently known to Sprague. *Id*. ¶ 30. Even though Massey has received the amount of $207,596.57 from NewPage, it has failed to pay Sprague and refuses to do so. *Id*. ¶ 12.

### III. Analysis

Sprague sues Massey on theories of breach of contract (Counts I and II), unjust enrichment (Count III), conversion (Count IV), interference with contract (Count V) and fraud (Count VI). *See id*. ¶¶ 13-32. Massey seeks dismissal of Counts IV-VI on grounds that (i) they sound in contract rather than tort and therefore are not actionable and, in any event, (ii) they are barred by the economic-loss doctrine. *See* Dismiss Memorandum at 5-8. Alternatively, Massey requests dismissal of Count VI (fraud) for failure to state the claim with particularity as required by Federal Rule of Civil Procedure 9(b) and dismissal of Count V (tortious interference) for failure to (i) allege that NewPage breached or terminated its contract with Sprague or (ii) plead fraud with particularity. *See id*. at 8-10. I agree with Massey that Sprague's claim of tortious interference (Count V) should be dismissed for failure to allege an essential element and that Sprague has failed to plead its fraud claim (Count VI) with sufficient particularity. However, I recommend that, rather than dismiss Count VI on that ground, the court permit discovery aimed at remedying its defects via further amendment of the complaint. For the reasons that follow, I find that none of Massey's other contentions has merit.

4

### A.  Contract Disguised as Tort

As a threshold matter, Massey seeks dismissal of Counts IV-VI (all of which are tort claims) on the basis that they are "merely disguised iterations" of Sprague's contract claims. *See id*. at 5. Massey initially provided no authority for this proposition, *see id*. at 5-6 – an omission that Sprague underscored in its opposing brief, *see* Plaintiff's Objection to Defendant's Motion To Dismiss ("Dismiss Objection") (Docket No. 13) at 3.  In reply, Massey belatedly buttressed its argument with citation to three Maine cases, *Stull v. First Am. Title Ins. Co*., 745 A.2d 975 (Me. 2000); *Neurology Assocs. of E. Me. v. Anthem Health Plans of Me., Inc*., No. CV-02-184, 2004 WL 3196899 (Me. Sup. Ct. Oct. 14, 2004), and *Pendleton Yacht Yard, Inc. v. Smith*, No. Civ. A. CV-01-147, 2003 WL 21714927 (Me. Sup. Ct. Mar. 24, 2003).  *See* Defendant's Reply to Plaintiff's Objection to Defendant's Motion To Dismiss ("Dismiss Reply") (Docket No. 14) at 2-3 & n.2.

Massey's belated proffer of a basis for its argument, in itself, warrants denial of its motion to dismiss on "disguised contract" grounds. *See, e.g., In re One Bancorp Sec. Litig*., 134 F.R.D. 4, 10 n.5 (D. Me. 1991) (court generally will not address an argument advanced for the first time in a reply memorandum).  Sprague has had no opportunity, of right, to respond to Massey's argument as clarified and buttressed by authority.  In any event, even assuming *arguendo* that it were appropriate to reach the merits (given that Massey did present an argument initially, albeit in skeletal form), the outcome would be the same.

As Sprague argues, *see* Dismiss Objection at 3, a party clearly is permitted as a procedural matter to plead tort and contract claims in the alternative, *see, e.g*., Fed. R. Civ. P. 8(a) & (e)(2) ("Relief in the alternative or of several different types may be demanded. . . .  A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."); *Supra USA Inc. v. Samsung Elecs. Co.,* No. 85 Civ. 9696

(CBM), 1987 WL 19953, at *1 (S.D.N.Y. Nov. 10, 1987) (pursuant to Federal Rules of Civil Procedure, plaintiff clearly was entitled to plead contract, tort claims in the alternative).

Massey's reply brief clarifies that it presses a separate point: that substantive Maine law precludes Sprague from disguising contract claims in tort clothing.  *See* Dismiss Reply at 2-3.  Nonetheless, Maine (unlike, for example, Pennsylvania) has no general prohibition against classifying asserted wrongful conduct in both tort and contract terms. *See, e.g., S.D. Warren Co. v. Eastern Elec. Corp.*, 183 F. Supp.2d 113, 123-24 (D. Me. 2002) (noting differences between Maine law and Pennsylvania's "gist of the action" doctrine, which examines whether the gist or gravamen of an action sounds in contract or tort); *see also, e.g., Mill Run Assocs. v. Locke Prop. Co.*, 282 F. Supp.2d 278, 290 (E.D. Pa. 2003) (describing Pennsylvania's "gist of the action" doctrine as precluding plaintiffs "from re-casting ordinary breach of contract claims into tort claims").  Nor do the cases Massey cites help it.  *Stull* concerns tort claims by an insured against an insurer.  *See Stull*, 745 A.2d at 980 ("In a claim by an insured against its insurer, tort recovery must be based on actions that are separable from the actual breach of contract.").  *Pendleton* addresses application of the economic-loss doctrine (discussed below).  *See Pendleton*, 2003 WL 21714927, at *3 ("The Economic Loss Doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and, the only losses suffered are economic in nature.") (citation and internal quotation marks omitted).  In *Neurology*, the court held, in relevant part, that (i) the plaintiff's Count II failed to allege the elements of a claim of intentional interference with an existing contractual relationship and (ii) its Count III, alleging negligence, was indistinguishable from breach of contract inasmuch as the negligence assertedly consisted of failure to comply with the terms of an agreement.  *See Neurology*, 2004 WL 3196899, at *1.

Unlike the plaintiff in *Neurology*, Sprague does not allege that Massey was negligent in that it failed to honor the terms of an agreement. *See generally* Complaint. Rather, in the counts in issue, Sprague alleges conversion, fraud and interference with contract. *See id*. ¶¶ 23-32. Massey does argue, like the defendant in *Neurology*, that Sprague falls short of alleging all essential elements of some of its tort claims (in this case, fraud and interference with contract), *see* Dismiss Memorandum at 5 n.4. As discussed below, I agree that this is the case with respect to the interference-with-contract claim. However, Massey fails to present a persuasive argument for dismissal of the fraud claim on this basis.

Pursuant to Maine law, a defendant is liable for fraud if it "(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage." *St. Francis de Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 818 A.2d 995, 1003 (Me. 2003) (citation and internal quotation marks omitted).

Massey reasons that inasmuch as Sprague alleges that NewPage was contractually obligated to pay Massey upon presentation of an invoice from Sprague, NewPage's contract with Sprague, rather than Massey's conduct, induced NewPage to tender funds to Massey. *See* Dismiss Memorandum at 5 & n.4. This is a crabbed and unfair reading of the Complaint. In fact, Sprague does allege that Massey's conduct induced NewPage to pay Massey: specifically, that Massey caused NewPage to pay by presenting an invoice to NewPage, ostensibly pursuant to the December 22, 2003 contract and the later side agreement, when in fact Massey had no intention of paying the monies over to Sprague. *See*

Complaint ¶¶ 30-32. Massey accordingly falls short of making a persuasive argument for dismissal on this ground.[2]

For the foregoing reasons, I recommend that the court deny Massey's motion to dismiss Counts IV-VI on the basis that they constitute contract claims masquerading as tort claims.

### B. Economic-Loss Doctrine

Massey next asserts that Counts IV-VI are barred by the economic-loss doctrine, which Massey describes as preventing the use of tort claims to recover purely economic loss in cases in which a contract exists between the plaintiff and the defendant. *See* Dismiss Memorandum at 7-8. As Sprague observes, the Law Court to date has recognized this doctrine only in the context of product-liability suits. *See* Dismiss Objection at 4; *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 269-71 (Me. 1995); *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 394 F. Supp.2d 283, 287 (D. Me. 2005). While this court has "inferred from *Oceanside* that Maine's economic loss doctrine extends to disputes over professional service contracts[,]" *Banknorth*, 394 F. Supp.2d at 287 (citing *Maine Rubber Int'l v. Environmental Mgmt. Group, Inc.*, 298 F. Supp.2d 133, 137-38 (D. Me. 2004)), the extent of its further reach is unclear.

In any event, assuming *arguendo* that the doctrine properly could be extended to cover these circumstances, Sprague correctly observes that it typically has been applied only in instances in which the parties are in privity. *See* Dismiss Objection at 4; *see*, *also, e.g., Banknorth*, 394 F. Supp.2d at 287. Here, Massey has made clear that there is a serious question whether the $207,596.57 invoice that is the subject of Counts IV-VI of the Complaint was covered by the 2004 side-letter agreement to

---

[2] In its reply memorandum, Massey contends that the Complaint fails to state a claim for fraud inasmuch as it does not allege that Massey's conduct induced *Sprague* to act or refrain from acting in justifiable reliance on a misrepresentation. *See* Dismiss Reply at 5. Although Massey indicates that this is simply a reiteration of an argument made on page 5 of its original brief, *see id.*, it is in fact a new contention raised for the first time in a reply memorandum, *compare id. with* Dismiss Memorandum at 5 & n.4. Hence, I will not consider it. *See, e.g., In re One Bancorp*, 134 F.R.D. at 10 n.5.

8

which Massey was a party. *See, e.g.,* Dismiss Memorandum at 3 (stating that coal with respect to which Sprague provided services from August 25-27, 2005 was not subject to terms of side letter). Therefore, assuming *arguendo* that dismissal of Counts IV-VI on the basis of application of the economic-loss doctrine would be appropriate at any stage of this litigation, it is at the least premature now. *See, e.g., Banknorth*, 394 F. Supp.2d at 287; *Pendleton*, 2003 WL 21714927, at *4 (denying summary judgment on basis of economic-loss doctrine in professional-service-contract case on grounds, *inter alia*, of existence of "a genuine issue as to whether there was any contract between the plaintiff and defendant Smith at the time the defendant made the observations and rendered the opinions complained of").

Massey's bid for dismissal of Counts IV-VI on the basis of application of the economic-loss doctrine accordingly should be rebuffed.

### C. Failure To Plead Fraud With Particularity

Massey next seeks dismissal of Sprague's fraud claim (Count VI) on the basis of failure to plead with particularity as required by Federal Rule of Civil Procedure 9(b). *See* Dismiss Memorandum at 8-9. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). As Massey notes, the rule has been construed to impose on the pleader an obligation to allege "the time, place, and content of [the] alleged false representation." Dismiss Memorandum at 8 (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)).

Massey argues that the Complaint contains insufficient details of the time or place of any supposed misrepresentation and fails to set forth any "content" – namely, the existence of any actual false statement. *See id*. at 9. Fraud need not necessarily take the form of an express false statement;

9

rather, it can be predicated on active concealment of the truth. *See, e.g., Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 905 (Me. 1999) ("Where there is no affirmative misrepresentation by the defendant, in order to prove fraud a plaintiff must demonstrate an active concealment of the truth or a special relationship that imposes a duty to disclose on the defendant.").

In this case, Sprague alleges an active concealment of the truth: *i.e.*, that while Massey ostensibly was acting in its role as disbursement agent for NewPage, it obtained a payment from NewPage that it had no intention of disbursing to Sprague – an intention it omitted to disclose to either Sprague or NewPage. *See* Complaint ¶¶ 30-32. The Complaint thus satisfies the "content" element of Rule 9(b).

The Complaint also is sufficiently detailed to satisfy the rule as to particularity of place. Sprague, which has its principal place of business in Portsmouth, New Hampshire, alleges that it sent an invoice in the amount of $207,596.57 to Massey, which has its principal place of business in Richmond, Virginia, that Massey then prepared and sent an invoice to NewPage, successor in interest to MeadWestvaco, which had an address in Richmond, Virginia, that NewPage then sent payment in full to Massey, and that Massey has refused to forward that payment to Sprague or return it to NewPage. *See id.* ¶¶ 1-2, 6, 10-12.[3]

With respect to time, the Complaint states that Sprague (i) forwarded the invoice in question to Massey on or about August 31, 2005, and (ii) is unaware when an invoice was forwarded to NewPage inasmuch as it has not been provided a copy of the same. *See id.* ¶ 30. Sprague also provides no date on which NewPage purportedly paid Massey in full. *See id.* The Complaint thus fails to provide the requisite detail as to time. Nonetheless, dismissal of the fraud claim on this ground is unwarranted.

---

[3] Sprague neglects to set forth the place of incorporation or principal place of business of NewPage. *See generally* Complaint. While this omission, standing alone, would not in my view be fatal under Rule 9(b), in the event the court agrees with me that the Complaint is deficient as to time and that the correct remedy is to permit discovery, this omission as to place should also be addressed.

As Sprague observes, *see* Dismiss Objection at 6-7, this court has noted that dismissal of a complaint is not mandatory in cases in which Rule 9(b) is not satisfied, *see, e.g., J.S. McCarthy Co. v. Brausse Diecutting & Converting Equip., Inc*., 340 F. Supp.2d 54, 59-60 (D. Me. 2004); *Freeport Transit, Inc. v. McNulty*, 239 F. Supp.2d 102, 117 (D. Me. 2003).[4]

In this case, in which the missing detail is in the hands of third parties – the defendant, Massey, and third-party defendant, NewPage – the just and sensible solution is to provide the plaintiff, Sprague, a period of time within which to conduct discovery regarding the time, place and content of the alleged fraud, at the end of which period Sprague shall be directed either to file a motion to amend and tender a proposed amended complaint complying fully with Rule 9(b) or to voluntarily dismiss its fraud claim. *See, e.g., McCarthy*, 340 F. Supp.2d at 60; *Freeport Transit*, 239 F. Supp.2d at 118. While the court has in the past afforded a period of sixty days, *see id*., a scheduling order has yet to issue in this case. Hence, I recommend that the defendant be directed to make the requisite filing on or before the deadline provided in the scheduling order, when it issues, for joinder of parties and amendment of pleadings.

For the foregoing reasons, I recommend that the court deny Massey's motion to dismiss on this basis, instead providing Sprague the above-described period of time within which to conduct discovery as to the time, place and content of the alleged fraud, at the end of which period Sprague shall either file a motion to amend, accompanied by a proposed amended complaint fully complying with Rule 9(b), or voluntarily dismiss its fraud claim. The court should make clear that failure to take either step on a timely basis shall be grounds for dismissal of Count VI.

---

[4] Although this approach first was employed in the context of claims pursuant to the Racketeer Influenced and Corrupt Organization Act, *see, e.g., New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290-92 (1st Cir. 1987); *Freeport Transit*, 239 F. Supp.2d at 116-18, this court has applied it to a garden-variety fraud claim in circumstances in which the plaintiff raised a substantial question whether its allegations, though failing to comport with Rule 9(b), could be substantiated through discovery and the defendant was in exclusive control of the information to be discovered, *see McCarthy*, 340 F. Supp.2d at 60.

### D. Failure To Allege All Elements of Tortious Interference With Contract

Massey finally seeks dismissal of Sprague's claim of tortious interference with contract (Count V) on the basis of failure to allege that Massey's purported interference had any effect on the contractual relationship between Sprague and NewPage. *See* Dismiss Memorandum at 9-10. Specifically, Massey asserts that Sprague fails to allege that Massey induced NewPage to breach and/or terminate its contract with Sprague. *See id*.

The Complaint does indeed fail to allege that Massey's conduct procured the breach of Sprague's contract with NewPage. *See* Complaint ¶¶ 26-28. Massey is correct that such an allegation is essential to sustain a cause of action for tortious interference with contract pursuant to Maine law. *See, e.g., June Roberts Agency, Inc. v. Venture Props., Inc*., 676 A.2d 46, 50 (Me. 1996) ("A party can recover damages for a tortious interference with a contract if a person by fraud or intimidation procures the breach of a contract that would have continued but for such wrongful interference.") (citation and internal quotation marks omitted); *St. Hilaire v. Edwards*, 581 A.2d 806, 807 (Me. 1990) ("The only claim that the complaint could be read to state is that the Edwardses tortiously interfered with St. Hilaire's contract to sell the New Gloucester property. The pleading fails to allege, however, that the Edwardses used fraud or intimidation to procure the breach of St. Hilaire's contract, an essential element of that claim.").

As Massey observes, *see* Dismiss Reply at 5-6, *Rutland v. Mullen*, 798 A.2d 1104 (Me. 2002), on which Sprague relies for the proposition that, to prove tortious interference, one need only show interference with a contract or prospective economic advantage, not breach or termination, *see* Dismiss Objection at 8, is distinguishable inasmuch as *Rutland* involved a claim of tortious interference with prospective economic advantage, *see Rutland*, 798 A.2d at 1110.

Massey accordingly demonstrates entitlement to dismissal of Count V.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **GRANTED** as to Count V and otherwise **DENIED**. If this recommended decision is adopted, I further recommend that the plaintiff be afforded the opportunity to conduct discovery regarding the time, place and content of the fraud alleged in Count VI and that the plaintiff be directed to file, on or before the deadline for joinder of parties and amendment of pleadings to be set forth in a scheduling order to be issued by the court, either (i) a motion to amend, accompanied by a proposed amended complaint complying fully with Rule 9(b), or (ii) a voluntary dismissal of Count VI. I finally recommend that the court add a proviso that a failure to so file on a timely basis shall be grounds for dismissal of Count VI.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of March, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

13